**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| STEVEN KADONSKY, | : | |
| | : | Civil Action No. 14-8104 (MAS) (LHG) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| STEPHEN D'ILIO, et al., | : | |
| | : | |
| Defendants. | : | |

**SHIPP, District Judge:**

*Pro se* Plaintiff Steven Kadonsky ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. The Court previously granted Plaintiff *in forma pauperis* status. (Order, Sept. 4, 2015, ECF No. 10.) At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions). For the reasons stated below, all federal claims against Defendants New Jersey Department of Corrections ("NJDOC") and Stephen D'Ilio are dismissed, all federal claims regarding soundproofing the videoconference room at the New Jersey State Prison are dismissed, and all state law claims are dismissed. The balance of the Complaint is allowed to proceed past screening.

### I.   FACTUAL BACKGROUND

For the purposes of this Opinion, the Court construes all facts alleged in the Complaint as true, and in the light most favorable to Plaintiff. Plaintiff's claims can be categorized as arising

out of three separate incidents or series of incidents: (1) a series of incidents allegedly involving an ongoing theft of, and denial of access to, Plaintiff's personal religious documents by Defendants, in violation of, among other things, his First Amendment right to the free exercise of religion, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), (*see* Compl. 7-26, ECF No. 1); (2) Defendants' alleged failure to provide Plaintiff with a soundproof videoconference room, for communications with his attorney, (*id.* at 26-28); and (3) alleged illegal deductions of funds from Plaintiff's prisoner account by Defendants, (*id.* at 28-30). The Complaint asserts various federal and state law claims that arose out of these three incidents.

## II. STANDARD OF REVIEW

Every complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure. Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . .

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

In determining the sufficiency of a *pro se* complaint, the Court must be mindful to accept its factual allegations as true, *see James v. City of Wilkes–Barre*, 700 F.3d 675, 679 (3d Cir. 2012), and to construe it liberally in favor of the plaintiff. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992).

2

### III. DISCUSSION

A plaintiff can pursue a cause of action under § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Thus, to state a claim for relief under § 1983, a plaintiff must establish, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50-1 (1999); *Morrow v. Balaski*, 719 F.3d 160, 166-67 (3d Cir. 2013).

Except for the claims identified below, the Court finds that all other claims in the Complaint have plausibly stated a claim against the relevant defendants, and therefore those claims are permitted to proceed past screening.

#### A. Eleventh Amendment Immunity

The Court first addresses the claims against NJDOC. The Eleventh Amendment to the United States Constitution provides that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. As such, the Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought. *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Section 1983 does not override a state's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 338 (1979). Courts have

repeatedly held that DOC is a state agency entitled to immunity. *See, e.g., Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 224 n.9 (3d Cir. 2015) ("[T]he Court correctly dismissed the NJDOC from this case on Eleventh Amendment grounds."); *Bell v. Holmes*, No. 13-6955, 2015 WL 851804, at *3 (D.N.J. Feb. 23, 2015); *Homan v. N.J. Dep't of Corr.*, No. 13-1466 (MAS), 2014 WL 4273304, at *3 (D.N.J. Aug. 28, 2014); *Wimbush v. Jenkins*, No. 13-4654, 2014 WL 1607354, at *4 (D.N.J. Apr. 22, 2014); *Love v. Dep't of Corr.*, No. 13-1050, 2014 WL 46776, at *2 (D.N.J. Jan. 6, 2014).

Because NJDOC is a state agency immune from § 1983 suits, all claims against NJDOC are dismissed with prejudice.

### B. Videoconference Room Claims

Next, Plaintiff asserts that Defendants' failure to soundproof the videoconference room, where inmates typically conduct meetings with their attorneys remotely, violated his constitutional rights, because his confidential conversations with his attorney can be heard outside of the room. The Court construes Plaintiff's claim as a denial of access to the courts claim. *See Aruanno v. Main*, 467 F. App'x 134, 137 (3d Cir. 2012) (construing a § 1983 plaintiff's claim, that the prison officials denied him meaningful access to communication with his attorneys, as an access to the courts claim). To prevail on a denial of access to the courts claim, Plaintiff must demonstrate that: "(1) he suffered an 'actual injury' (*i.e.*, that he lost an opportunity to pursue a nonfrivolous claim); and (2) he has no other remedy . . . that can possibly compensate for the lost claim." *Schreane v. Holt*, 482 F. App'x 674, 676 (3d Cir. 2012) (citing *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008)); *Aruanno*, 467 F. App'x at 136-37.

Here, Plaintiff's allegations fall far short of establishing injury. To begin, Plaintiff does not allege that anyone actually overheard or monitored any communication he had with his

attorney. Plaintiff simply alleges that when he was waiting to use the videoconference room, "[w]hile across the hall, in a locked room, Plaintiff heard every word [another] prisoner was saying to his attorney." (Compl. 1.) So Plaintiff's claim is not based on any actual or even perceived injury—it is based on a mere *possibility* that someone could eavesdrop or monitor a conversation he may be having with his attorney. Paranoia does not give rise to a constitutional violation. *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). Plaintiff does not allege that any of his own conversations were being monitored; he does not allege that any confidential information gained, if any monitoring had even occurred, were used against him; and he does not allege that he lost any legal claims due to the use of any such confidential information—information he does not allege that Defendants even had. That is simply not enough to survive dismissal. *See Aruanno*, 467 F. App'x at 137 (upholding the district court's dismissal of plaintiff's access to the courts claim, finding "mere allegations that Aruanno could not make private telephone calls or that an attorney visit was ended prematurely," without "identify[ing] any cognizable harm that he suffered in any specific lawsuit," is not enough to overcome dismissal). Accordingly, Plaintiff has failed to state a claim upon which relief may be granted, and all federal claims in the Complaint regarding soundproofing the videoconference room are dismissed.

### C. Claims Against D'Ilio

Next, the Court addresses Plaintiff's federal claims against Defendant D'Ilio. According to the Complaint, D'Ilio is the Administrator of the New Jersey State Prison during the events alleged in the Complaint. (Compl. 3.) Although the Complaint alleges various claims against D'Ilio, none of them are based on his actual personal involvement. To be sure, there are numerous general assertions of alleged personal involvement against D'Ilio, but they are clearly of a

conclusory nature devoid of factual basis. For example, in one instance, Plaintiff alleges that "[My religious mail] were stolen by Defendants NJDOC, SMITH, D'ILIO, CAMPOS, GERDES, and/or JOHN AND JANE DOES." (Compl. 9.) This is obviously a general and conclusory allegation that is not directed at any of the specified defendants—the use of "and/or," as well as the inclusion of john and jane doe defendants in the allegation, plainly indicates that Plaintiff has no idea who actually stole his religious mail, and it was obviously impossible for NJDOC, which is not a real person, to commit the act of stealing mail. As the Administrator of the entire prison, it was also unlikely that D'Ilio personally handled any of Plaintiff's mail at any time. In fact, almost all allegations in the Complaint are made in this blanket fashion, each one made toward each and every defendant, regardless of whether the allegation is plausibly related to each defendant or not.

Certainly, many of these allegations are plausibly raised against certain defendants. For example, claims of stolen mail, made against Defendant Derick Smith, allegedly the Mailroom and Property Room Sergeant, (Compl. 5), are not so speculative as to warrant dismissal on screening. But no such plausible allegations of personal involvement are made against D'Ilio, who, as the Administrator, was unlikely to have been involved in the day-to-day operations of the prison where the alleged violations occurred. As such, the only plausible claims of any kind made against D'Ilio are that (1) he is responsible for the constitutional violations of his subordinates, and (2) he implemented policies and customs that caused the constitutional violations.

However, in a § 1983 claim, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* While affirmative action by a supervisory official is not required to state a § 1983 claim, Plaintiff must still show that "a supervisor . . . had

knowledge and acquiesced in the subordinate's unconstitutional conduct." *Barkes v. First Corr. Med. Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (rev'd on other grounds); *see Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) ("Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."). Since Plaintiff has made no factual allegations of personal involvement against D'Ilio, nor any factual allegations of knowledge and acquiescence against him, Plaintiff has failed to state a claim on all of Plaintiff's direct federal claims against D'Ilio.

As to any potential claims against D'Ilio regarding policies and customs, in order to state such a claim, the plaintiff must identify an official custom or policy that caused a constitutional deprivation. *Caldwell v. Egg Harbor Police Dep't*, 362 F. App'x 250, 251-52 (3d Cir. 2010). It is not enough that a plaintiff alleges his constitutional rights have been violated by some unidentified policy or custom—the plaintiff must point to a specific policy or custom that caused the alleged violation. *Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014). "Simply paraphrasing § 1983" is insufficient to "satisfy the 'rigorous standards of culpability and causation' required to state a claim for . . . liability [based on policy or custom]." *Id.* (quoting *McTernan v. City of York*, 564 F. 3d 636, 658-59 (3d Cir. 2009)). Here, the Complaint does not identify any specific policy or custom that caused any of the alleged violations, nevermind that any such policy was adopted or implemented by D'Ilio. As such, Plaintiff also failed to state a claim against D'Ilio on any potential policy claims and, therefore, all federal claims against D'Ilio are dismissed without prejudice.

### D. State Law Claims

Finally, the Court addresses Plaintiff's state law claims. Under the New Jersey Tort Claims Act, when asserting a state tort claim against a public entity or a public employee, a plaintiff must

give notice of the claim within ninety days after the cause of action has accrued. *See* N.J.S.A. § 59:8-8; *Konah v. City of Newark*, No. L-962-10, 2011 WL 1598957, at *2 (N.J. Sup. Ct. App. Div. Apr. 29, 2011); *Brown v. Twp. of Neptune*, No. 11-7162, 2014 WL 3517776, at *7 (D.N.J. July 15, 2014). This notice requirement applies to common law intentional tort claims, *Ptaszynski v. Uwaneme*, 371 N.J. Super. 333, 343 (App. Div. 2004), as well as negligent conduct, *Velez v. City of Jersey City*, 180 N.J. 284, 292-93 (2004). This ninety-day notice period may be extended by a court upon a finding of "sufficient reasons constituting extraordinary circumstances for [the plaintiff's] failure to file notice of claim within the period of time prescribed," but only if the plaintiff files a late notice "within one year after the accrual of his claim[.]" N.J.S.A. § 59:8-9; *see Slater v. Hardin*, No. L-8574-09, 2014 WL 923337, at *5 (N.J. Sup. Ct. App. Div. Mar. 11, 2014). Plaintiffs who do not comply with this requirement are "forever barred" from recovering on their claim. *See* N.J.S.A. § 59:8-8. Notice is important because it provides state agencies the "opportunity to investigate the claims, and take disciplinary or other appropriate action to rectify inappropriate behavior or flawed practices[.]" *Mawhinney v. Francesco*, No. 08-3317, 2010 WL 2557713, at *9 (D.N.J. June 22, 2010) (quoting *Velez*, 180 N.J. at 293). Failure to file a notice of claim is a ground for dismissal at the motion to dismiss stage. *See William v. Westampton Police Dep't*, No. L-1144-13, 2014 WL 5393184, at *3 (N.J. Sup. Ct. App. Div. Oct. 24, 2014).

Here, because Plaintiff claims relief under state law, he must follow established state procedures. *See Murphy v. Bloom*, 443 F. App'x 668, 670 (3d Cir. 2011) ("The District Court [] properly recognized that Murphy did not follow the proper procedure for bringing a [state law] claim . . . as required by state law."). There is no allegation in the Complaint that Plaintiff filed the required notice of claims. Under New Jersey law, Plaintiff is required to file the notice of claims before he *initiates* any state law tort action against Defendants. *See* N.J.S.A. § 59:8-3. As

such, Plaintiff must demonstrate, at the time he filed the Complaint, that such notice of claims had already been served. *See Ptaszynski v. Uwaneme*, 371 N.J. Super. 333, 343 (App. Div. 2004) (holding that the notice requirement under the Tort Claims Act is a jurisdictional precondition to filing suit). No such demonstration has been made in the Complaint. *See* Fed. R. Civ. P. 8(a) ("A pleading that states a claim for relief must contain . . . the grounds for the court's jurisdiction[.]"). Because there is no allegation that a notice of claims has been filed with Defendants, Plaintiff has failed to establish, under Rule 8, that this Court has jurisdiction over Plaintiff's state law claims. Accordingly, Plaintiff's state law claims are dismissed for lack of jurisdiction. *See Bethea v. Roizman*, No. 11-254, 2012 WL 2500592, at *7 (D.N.J. June 27, 2012) (dismissing plaintiff's state law tort claims for his failure to plead compliance with the notice requirement under the Tort Claims Act).

In the interest of justice, Plaintiff may, within thirty days of the date of entry of the accompanying Order, amend the Complaint to include assertions that he indeed filed a notice of claims with Defendants, which would then establish the grounds for this Court's jurisdiction over Plaintiff's state law claims. Plaintiff is advised that it would be prudent to attach a copy of the actual notice of claims to the amended complaint. Plaintiff may also amend the Complaint to address any deficiencies identified in the instant Opinion for claims that have not been dismissed with prejudice.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's federal claims against NJDOC are DISMISSED WITH PREJUDICE, Plaintiff's federal claims against Defendant Stephen D'Ilio are DISMISSED WITHOUT PREJUDICE, Plaintiff's claims relating to soundproofing the videoconference room are DISMISSED WITHOUT PREJUDICE, and Plaintiff's state law claims are DISMISSED for

lack of jurisdiction. Defendants NJDOC and Stephen D'Ilio are DISMISSED from the case. Plaintiff shall have thirty days from the date of entry of the accompanying Order to amend the Complaint.

Date: 7/1/16

/s/ Michael A. Shipp
Michael A. Shipp, U.S.D.J.