**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN KADONSKY, <br><br> Plaintiff, <br><br> v. <br><br> STEPHEN D'ILIO, *et al.*, <br><br> Defendants. | Civil Action No. 14-8104 (MAS) (RLS) <br><br> **OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Plaintiff's motion for partial summary judgment (ECF No. 103), which was opposed by Defendants (ECF Nos. 108-09), and supported by Plaintiff through a reply brief (ECF No. 116). Also before the Court is the motion for summary judgment filed by Defendants. (ECF No. 111.) Plaintiff filed opposition to that motion (ECF No. 117), to which Defendants replied (ECF No. 123). For the following reasons, the Court denies Plaintiff's motion, grants Defendants' motion, and enters judgment in favor of Defendants.

**I.   BACKGROUND**

In his operative Third Amended Complaint, Plaintiff essentially raises three claims. In the first, Plaintiff asserts that during his confinement in state prison between November 1995 and June 2020, Plaintiff frequently accrued fines, fees, postage, and copy charges which were assessed against his inmate account. (ECF No. 109-2 at 6.) According to Plaintiff, although prison policy and state law forbid the taking of the last fifteen dollars in Plaintiff's account to repay these fines and fees, prison officials repeatedly did so between January 1996 and December 2012. (*Id.*)

In his next claim, Plaintiff alleges that following a disciplinary infraction in December 2012, he lost his prison job and pay. (*Id.* at 8-9.) As a result of this loss in pay, Plaintiff was forced to take legal loans and medical loans to pay fees he accrued while in confinement, which he believes is improper under state regulations. (*Id.*) Plaintiff further asserts that he believes he is entitled to back pay under state regulations because some of his disciplinary charges were reversed on appeal. (*Id.*) During his deposition, Plaintiff clarified that the Appellate Division affirmed some of his disciplinary convictions and reversed or remanded others. (*See* ECF No. 109-2 at 29.)

In his final claim, Plaintiff alleges that his prison loans were not forgiven upon his release. (*Id.* at 10.) Plaintiff believes that this lack of forgiveness runs afoul of what he believes was a prison policy to forgive institutional loans to all released inmates. (*Id.*) Plaintiff thus believes he has been subjected to "unequal treatment." (*Id.*)

## II.     LEGAL STANDARD

Pursuant to Rule 56, a court should grant a motion for summary judgment where the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is material "if it bears on an essential element of the plaintiff's claim," and is genuine if "a reasonable jury could find in favor of the non-moving party." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). In deciding a motion for summary judgment, a district court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion," *id.*, but must not make credibility determinations or

2

engage in any weighing of the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, [however,] there is no genuine [dispute] for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party has met this initial burden, the burden shifts to the non-moving party who must provide evidence sufficient to establish that a reasonable jury could find in the non-moving party's favor to warrant the denial of a summary judgment motion. *Lawrence v. Nat'l Westminster Bank N.J.*, 98 F.3d 61, 65 (3d Cir. 1996); *Serodio v. Rutgers*, 27 F. Supp. 3d 546, 550 (D.N.J. 2014).

> A nonmoving party has created a genuine [dispute] of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial. However, the party opposing the motion for summary judgment cannot rest on mere allegations, instead it must present actual evidence that creates a genuine [dispute] as to a material fact for trial.

*Serodio*, 27 F. Supp. 3d at 550.

### III. DISCUSSION

#### A. Plaintiff's Excessive Withdrawal Claims

In their summary judgment motion, Defendants argue that Plaintiff's civil rights claims[1] based on alleged excessive and improper withdrawals from his inmate account must be dismissed as Plaintiff has an adequate post-deprivation remedy available to him in the form of both the prison

---

[1] In his complaint, Plaintiff asserts that he is raising his claims pursuant to both 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"). Claims brought pursuant to the NJCRA are construed as analogous to their § 1983 federal counterparts, and are therefore analyzed using the legal framework applicable to the analogous § 1983 claim absent clear state law indicating a particular claim is to be analyzed differently. *See, e.g., Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011). This Court therefore does not distinguish between Plaintiff's § 1983 and NJCRA claims in this opinion and instead analyzes Plaintiff's claims under the applicable § 1983 standards which are equally applicable to Plaintiff's NJCRA claims as there is no clear state caselaw to the contrary.

remedy system, which Plaintiff has frequently used, and the state tort claims act. Generally, "[w]here a state actor deprives an individual of property without authorization, either intentionally or negligently, that deprivation does not result in a violation of the Fourteenth Amendment so long as a meaningful post deprivation remedy for the loss is available. *See Hudson v. Palmer*, [468 U.S. 517, 530-36] (1984); *Parratt v. Taylor*, [451 U.S. 527, 543-44] (1981), *overruled in part on other grounds*, *Daniels v. Williams*, [474 U.S. 327] (1986)." *Love v. N.J. Dep't of Corr.*, No. 14-5629, 2015 WL 2226015, at *5 (D.N.J. May 12, 2015). Both the New Jersey Tort Claims Act and the prison remedy system constitute sufficient post-deprivation processes to alleviate any liability based on a denial of due process in the improper taking of inmate funds or properties. *Love*, 2015 WL 2226015, at *5; *see also Pressley v. Huber*, 562 F. App'x 67, 70 (3d Cir. 2014) (state tort claim and prison damaged property grievance system provide a sufficient post-deprivation remedy).

The Third Circuit addressed a claim markedly similar to Plaintiff's in *Ragland v. Commissioner New Jersey Department of Corrections*, 717 F. App'x 175 (3d Cir. 2017). The panel in that case held that the unauthorized debiting of an inmate account below the minimum threshold under state law "could not be remedied by predeprivation procedures" and the state would adequately address any due process issues arising from such a debit through post-deprivation remedies such as resort to the prison's internal grievance system or the New Jersey Tort Claims Act. *Id.* at 177-78. Thus, where an adequate post-deprivation remedy, such as the Tort Claims Act or prison remedy system, is made available, no civil rights claim will be available for a prison's alleged improper deducting of an inmate's account. *Id.* As Plaintiff in this matter clearly had these same remedies available, and indeed showed he was ready and able to make use of them, his civil rights claim regarding the alleged improper deductions from his inmate account

4

fails to set forth a valid basis for relief and judgment must be entered in favor of Defendants as to that claim.[2]

    **B.    Plaintiff's Job Loss and Back Pay Claim**

Defendants also argue that they are entitled to judgment as a matter of law as to Plaintiff's claim regarding the loss of his job and prison pay as Plaintiff has no right to a prison job in any event. Defendants are entirely correct that prisoners have no constitutional right to any particular prison job or a prison job at all. *See Watson v. Sec'y Pa. Dep't of Corr.*, 567 F. App'x 75, 78 (3d Cir. 2014); *see also James v. Quinlan*, 866 F.2d 627, 630 (3d Cir. 1989) (prisoners have "no entitlement to a specific job, or even to any job"). As a prisoner has no constitutionally protected right to a prison job, it necessarily follows that he likewise has no freestanding constitutional right to back pay if he loses that job, even if the loss is allegedly improper. *See, e.g.*, *Larson v. Patton*, No. 07-1043, 2007 WL 2581688, at *2 (E.D. Ca. Sept. 5, 2007) (as prisoners have no right to a prison job they are not "constitutionally entitled to any back wages for the loss of that job or to reinstatement"). Caselaw is thus clear that Plaintiff in this case has no protected right to a prison job or back pay in the abstract.

Seeking to avoid this outcome, Plaintiff contends that he has a state created liberty interest in back pay for any job loss alleviated by the overturning of a prison disciplinary penalty. Plaintiff bases this assertion on a state statute, N.J.S.A. § 30:4-92, which provides that prison inmates "shall be employed in productive occupations consistent with their health, strength, and mental capacity and shall receive compensation for this employment as the commissioner shall determine." Courts in this District, however, have rejected the contention that this statute creates a liberty or property interest in prison employment because corrections officials maintain considerable discretion in the

---

[2] Because *Ragland* clearly resolves this claim, this Court need not and does not address the issue of qualified immunity in relation to it.

provision of jobs and pay. *See, e.g., Bannon v. Ellis*, No. 08-5998, 2009 WL 1873588, at *5-6 (D.N.J. June 29, 2009); *Little v. Terhune*, 200 F. Supp. 2d 445, 450 & n.4 (D.N.J. 2002) ("that New Jersey may have granted prisoners access to [educational and work] programs does not necessarily grant inmates a liberty or property interest in them"); *Johnson v. Fauver*, 559 F. Supp. 1287, 1290 (D.N.J. 1983); *Rowe v. Fauver*, 533 F. Supp. 1239 (D.N.J. 1982); *see also Lumumba v. N.J. Dep't of Corr.*, 2017 WL 1244337, at *3 (N.J. App. Div. Apr. 5, 2017) ("inmates are not guaranteed work assignments" under the statute and "it is within DOC's discretion to determine whether to grant an inmate in administrative segregation the opportunity to work and earn wages"). It thus appears clear that Plaintiff had no protected state created liberty or property interest in his prison job in light of the significant discretion the state gives its Department of Corrections to provide or not provide employment.

If Plaintiff has no protected interest in his job itself, it follows that no interest would exist in the pay owed for such a job. Plaintiff contends that an administrative code section, N.J.A.C. § 10A:13-4.2(e), creates a liberty interest in back pay for those placed in administrative segregation on disciplinary charges who are then unable to work. The relevant section, however, provides that inmates "not available for work for a period of time due to a finding of guilt to a disciplinary charge resulting in sanctions by the Disciplinary Hearing Officer . . . shall not receive wages or, if appropriate, work time credits for that period of time." *Id.* It also provides that inmates will receive wages or, as appropriate, work time credits for days missed "where the inmate is withheld from work pending a disciplinary hearing adjudication that results in a not guilty decision." *Id.* Although Plaintiff contends that this creates a liberty interest in back pay, this would only be the case if the prisoner in question had an underlying right to the job itself which *provides* for the back pay. As discussed above, no such right exists, and a prisoner cannot have a state created interest in pay for a job he has no protected interest in possessing in the first interest.

6

Even putting aside this logical issue, to establish a state created liberty interest in the prison context, including in relation to job loss, a plaintiff must show that the loss involved imposes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Presbury v. Wenerowicz*, 472 F. App'x 100, 101 (3d Cir. 2012). The loss of a prison job and its resulting pay imposes no such atypical hardship. *Id.* As Plaintiff has not otherwise shown an atypical hardship, he cannot show that he possessed a constitutionally protected, state-created liberty interest in his prison employment or back pay. Plaintiff's assertion of a state created liberty interest[3] must therefore fail.[4] Judgment must therefore be entered in Defendants' favor as to Plaintiff's back pay and job loss related claims.

Putting aside the issue of back pay, Plaintiff also contends in his complaint that he was improperly required to take legal loans to pay for copies and filings, which he asserts was improper in light of his indigence during his confinement to administrative segregation. Defendants contend that this claim could only proceed under § 1983 or the NJCRA as a species of access to the courts claim, and Plaintiff has failed to support the elements of this claim. Plaintiff, meanwhile, concedes

---

[3] Plaintiff cites to *Hedgespeth v. Hendricks*, No. 06-3883, 2007 WL 2769627, at *8 (D.N.J. Sept. 21, 2007) for the contrary position. That case, an unpublished decision at the motion to dismiss stage, is not binding on this Court and ultimately was deciding the issue at the pleading stage before full proof of hardship would necessarily be required. Indeed, no final determination of the existence of a liberty interest was made as the issue was rendered moot in that case when the plaintiff there received back pay. *See Hedgespeth v. Hendricks*, 340 F. App'x 767, 770 (3d Cir. 2009). In light of caselaw requiring proof of a hardship to establish a liberty interest, even with respect to prison jobs or pay, this Court disagrees with *Hedgespeth* to the extent it stands for the proposition that there is a clear liberty interest in prison pay, especially in light of caselaw indicating that there is no underlying right to the prison job which would purport to provide that pay.

[4] In his response briefs, Plaintiff also attempts to recharacterize his claim as one for equal protection because the plaintiff in *Hedgespeth* was provided back pay. Plaintiff, however, has not shown himself to be similarly situated to that plaintiff, and in any event may not amend his claim, which did not raise any equal protection issue, by way of summary judgment responses. *See Jones v. Treece*, 774 F. App'x 65, 67 (3d Cir. 2019) (plaintiff "may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.")

he has no access to the courts claim and instead suggests that he has a standalone claim for an alleged violation of the New Jersey Administrative Code. *See* N.J.A.C. § 10A:6-2.6. That section of the administrative code, however, is not as cut and dry as Plaintiff contends – it provides that the Department will not charge indigent inmates for certain specific legal materials, to be determined in the "complete discretion" of certain prison staff. *Id.* Free legal copies, however, require than an inmate be indigent as defined in the code – "an inmate who has no funds in his or her account and is not able to earn inmate wages due to prolonged illness or any other uncontrollable circumstances, and who has been verified as having no outside source from which to obtain funds." N.J.A.C. § 10A:1-2.2. Plaintiff does not attempt to show that he truly meets this definition – he does not show that he was verified as having no outside source of income, or that his placement in detention amounts to "uncontrollable circumstances."

Any violation based on the loans, however, would be a mere violation of an administrative code section which does not provide a clear substantive right. The statutes under which Plaintiff raised his claims, § 1983 and the NJCRA, however, do not permit claims based on mere administrative errors. Rather, they require showing a violation of a constitutional right, either federal or state, or a clear violation of a substantive right secured by either state or federal law. *See Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (claim under § 1983 requires a "violation of a right protected by the Constitution or laws of the United States"); *Hernandez v. Hudson County*, No. A-1683-18T4, 2020 WL 3980391, at *6-7 (Super. Ct. N.J. App. Div. July 15, 2020) (violation of NJCRA requires violation of state or federal constitution or deprivation of a substantive right guaranteed by the New Jersey constitution or state law). Plaintiff did not raise a claim under the administrative code in his complaint, and may not amend his complaint through his summary judgment response. *Jones*, 774 F. App'x at 67. Plaintiff's allegations of administrative impropriety do not set forth the violation of a clear constitutional or substantive

8

right, and thus are insufficient to support a claim under either of the civil rights statutes he asserted in his complaint. Plaintiff has failed to support a constitutional claim for relief, and Defendants are thus entitled to summary judgment as to Plaintiff's alleged improper legal loan charges related claim.[5]

Alternatively, Defendants argue that they are entitled to judgment as to Plaintiff's back pay and legal loan related claims as they are entitled to qualified immunity as they did not violate a clearly established constitutional right. "The doctrine of qualified immunity shields government officials who perform discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)). In determining whether immunity applies, courts use a two pronged test: "a court must decide 'whether the facts that a plaintiff has . . . shown make out a violation of a constitutional right'[, a]nd second, the Court must determine 'whether the right at issue was clearly established' at the time of [the] defendant's alleged misconduct." *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

---

[5] Plaintiff, in his response, asserts that Defendants should not be entitled to judgment as to this claim as they did not argue that they were entitled to judgment as to the claim. This argument, however, rests on Plaintiff's assertion, after the filing of summary judgment, that his claim was not based on a species of access to the courts, the only recognized constitutional claim which logically follows from the scant allegations Plaintiff presented on the issue in his operative complaint. Defendants clearly did argue that this claim failed to provide a basis for relief under the statutes through which it was raised, and continue to do so. That Plaintiff attempts to move the goal posts after the fact does not preclude the granting of summary judgment.

For a claim to be clearly established, "existing precedent [must have] placed the . . . constitutional [right in] question *beyond debate.*" *Id.* at 638. With the exception of cases involving "obvious violations" of prior Supreme Court rulings, a plaintiff's claim will only be "clearly established" where "the violative nature of the *particular* conduct [was] clearly established." *James v. N.J. State Police*, 957 F.3d 165, 169 (3d Cir. 2020). The conduct in question must therefore be defined at an "appropriate level of specificity," *Spady*, 800 F.3d at 638, and the plaintiff must identify "a case where an officer acting under similar circumstances . . . was held to have violated" the constitutional provision in question. *James*, 957 F.3d at 169-70. For the purposes of this analysis, "clearly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a robust consensus of cases of persuasive authority in the Courts of Appeals" in effect at the time of the conduct in question. *Id.* at 170.

As explained above, there is no clearly established right to a prison job, nor is it in any way clear that there is a state created liberty interest in prison jobs or back pay, and the applicable caselaw suggests the contrary conclusion. Likewise, Plaintiff has presented no caselaw, and this Court is aware of none, which supports the proposition that the alleged errors in making legal loans, rather than providing free legal copies, to Plaintiff violates a clearly established constitutional right or substantive right under clearly established state law. Plaintiff has thus failed to show the denial of a clearly established right as to these claims, and Defendants are thus also entitled to judgment as a matter of law as they are entitled to qualified immunity as to these claims.

    **C.**    **Plaintiff's Loan Forgiveness Related Claim**

In his final claim, Plaintiff contends that Defendants violated his rights by failing to forgive his institutional loans upon his release. In his complaint and summary judgment motion, however, Plaintiff fails to identify any constitutional right which requires that his loan be forgiven, and this Court is aware of no caselaw recognizing or otherwise creating a right to prison loan forgiveness

sufficient to give rise to a claim under either § 1983 or the NJCRA. Defendants contend that they are entitled to judgment as to this claim.

Plaintiff, apparently aware that he has provided no constitutional basis for loan forgiveness, relies instead on his belief that there is a policy of loan forgiveness which was improperly not followed, based on a letter the Department of Corrections submitted in an Appellate Division case which resulted in an unpublished opinion. (*See* ECF No. 111-4 at 88-89.) The opinion in question, *Hodges v. Department of Corrections*, 2007 N.J. Super. Unpub. LEXIS 1009 (N.J. App. Div. Sept. 24, 2007), however, provides at best uncertain support for this contention. *Hodges* does not find that any such policy actually exists, nor does it stand for the proposition that there is any right to loan forgiveness in state law. Instead, the Appellate Division in *Hodges* merely acknowledged that a case was moot after the subject of the litigation – certain debits and loans – had been forgiven by the state. In so doing, the Appellate Division noted that, in a letter to the Court, the Department of Corrections had stated that "[p]ursant to DOC policy . . . any loans that were made to Hodges while he was in custody have been forgiven since he has now been released." *Id.* at \*3. Nothing in that letter spells out what the policy in question was, to whom the alleged policy applies, or any other terms of the alleged policy other than it resulted in Mr. Hodges having his loans forgiven following his release. Although Plaintiff attempts to point to Defendants' response to interrogatories to suggest that there is a clear continuing policy, the answer in question does not actually state such – instead Defendants state that "no policy changes" were made in relation to *Hodges* and "no individuals" created or implemented "a policy promulgating that institutional loans made to an inmate while in custody, are forgiven once an inmate is released." (*See* ECF No. 103-8 at 29.) There is thus no clear evidence in the record that there is a directly applicable loan forgiveness policy which was not followed in Plaintiff's case.

In any event, the question of whether such a policy exists is largely irrelevant. Here, Plaintiff provides two bases for his claims, § 1983 and the NJCRA. Under either statute, Plaintiff must establish the violation of a constitutional right, either federal or state, or a clear violation of a substantive right secured by either state or federal law. *See Nicini*, 212 F.3d at 806; *Hernandez*, 2020 WL 3980391, at *6-7. An alleged violation of an unclear alleged state policy does not give rise to a cause of action under either statute. Absent a constitutional violation sufficient to give rise to a claim, Plaintiff's § 1983 or NJCRA loan forgiveness claims must fail.

Facing this point, Plaintiff asserts in his summary judgment briefing that his claim is really an equal protection claim. Although Plaintiff's operative complaint noted that being forced to repay his loans amounted to "unequal treatment" it is not clear that Plaintiff intended to raise an equal protection claim given that his allegations largely depend on his belief that an alleged state policy to forgive loans was not followed in his case, and Plaintiff's complaint made no mention of anyone similarly situated who was subjected to different treatment. To establish an equal protection claim on a class of one basis,[6] Plaintiff must show that he was treated differently from others similarly situated without a rational basis for the difference in treatment. *See, e.g., Wofford v. Lanigan*, No. 14-5723, 2015 WL 9480016, at *5 (D.N.J. Dec. 28, 2015) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 563 (2000)). A necessary condition for making out an equal protection claim is showing that the individual who was treated differently was similarly situated. *Id.*; *see also Watlington ex. rel. FCI Schuylkill African Am. Inmates v. Reigel*, 723 F. App'x 137, 139 (3d Cir. 2018). As noted, Plaintiff's Third Amended Complaint makes no mention of similarly situated individuals who were subjected to different treatment and a plaintiff generally may not

---

[6] Plaintiff does not claim any protected-class based discrimination, and thus his claim could only proceed on a class of one basis, *see Village of Willowbrook*, 528 U.S. at 563, which is also the only basis he raises in response to Defendants' arguments.

amend away such an omission through summary judgment motion briefing. *Jones*, 774 F. App'x at 67.

Even granting Plaintiff the benefit of the doubt and permitting him to now present his claim as an equal protection claim as he implied such a claim with his raising of "unequal treatment," Plaintiff fails to show that he was treated differently from a similarly situated individual. In his current briefing, the only individual Plaintiff asserts was similarly situated is the plaintiff in *Hodges*, who was released in 2007 and had his loans apparently forgiven at that time. Plaintiff does not detail any similarities between himself and Hodges other than that they were both prisoners who took out loans. Nothing in the record indicates that Hodges had a similar number of loans or owed a similar amount of money. Nothing in the record suggests any other similarity between Hodges and Plaintiff other than being prisoners who had to take out loans for expenses. Plaintiff has thus clearly failed to show that there is no genuine dispute of material fact as to his equal protection claim, and Plaintiff is not entitled to summary judgment.

Because of the lack of clarity in Plaintiff's Third Amended Complaint, Defendants did not address the equal protection issue squarely in their briefing, and instead oppose Plaintiff's characterization of his claim as an illicit attempt to amend his complaint by way of summary judgment briefing. Defendants do argue, however, that they are subject to judgment as a matter of law as to this claim as Plaintiff raises it against only one Defendant – Acting Commissioner Kuhns – and fails to show any personal involvement on her behalf in any decision to refuse to forgive Plaintiff's loans. To be held responsible for a civil rights claim, a defendant must have "personal involvement" in the alleged wrong. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). A supervisor may therefore only be held liable where she either created a policy which caused the alleged wrong, participated in violating the plaintiff's rights, directed others to violate them, or as

13

the person in charge, had knowledge of and acquiesced in his subordinate's violations." *Murphy v. Middlesex County*, 361 F. Supp. 3d 376, 387 (D.N.J. 2019) (citing *Baker v. Monroe Township*, 50 F.3d 1186, 1190-91 (3d Cir. 1995)). Plaintiff fails to show that Kuhns was in any way involved in the alleged wrong. Indeed, insomuch as he asserts that there was a policy of forgiveness, he more undercuts her involvement than shows it.

The lack of personal involvement of the only named Defendant in this claim is especially problematic in a class of one equal protection claim. To make out that claim, Plaintiff must show that the named Defendant "intentionally" discriminated against him by treating him differently. *Village of Willowbrook*, 528 U.S. at 564. As Defendants argue, Plaintiff has failed to show any personal involvement on Kuhns' part in any decision not to forgive his loans, and in so failing in turn fails to show that she intentionally discriminated against him and treated him differently than others without a rational basis. As Plaintiff has failed to connect the only named Defendant as to the loan forgiveness count to the alleged wrong even when reconstrued as an equal protection claim, Defendant Kuhns is entitled to summary judgment as to that claim.

## IV.   CONCLUSION

In conclusion, the Court grants Defendants' summary judgment motion, denies Plaintiff's summary judgment motion, and enters judgment in favor of Defendants as to all of Plaintiff's claims.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**
